**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DAVID NEAL DAVIS, Sr.,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:14-02348** |
| | ) | **Judge Trauger/Brown** |
| **JAMES M. HOLLOWAY, Warden.** | ) | |

**To:  The Honorable Aleta A. Trauger, United States District Judge**.

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge recommends that: 1) petitioner's *habeas corpus* petition (Doc. 1) be **DENIED** and this action **DISMISSED WITH PREJUDICE**; 2) petitioner's request for an evidentiary hearing be **DENIED AS UNNECESSARY**; 3) the order entered by the District Judge approving and adopting this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; 4) should petitioner file a timely notice of appeal, such notice should be **DOCKETED AS BOTH A NOTICE OF APPEAL AND CERTIFICATE OF APPEALABILITY (COA)**, but a **COA SHOULD NOT ISSUE**.

## I.  INTRODUCTION

Petitioner is a prisoner in the West Tennessee State Penitentiary (WTSP) in Henning, Tennessee.  He brings this action under 28 U.S.C. § 2254, challenging the constitutionality of his 2008 convictions and sentences in the Rutherford County Circuit Court (the trial court).  Petitioner names James M. Holloway, Warden at WTSP, as respondent to this action.

## II.  STATEMENT OF THE CASE

The Grand Jury of Rutherford County (the Grand Jury) indicted petitioner on June 5, 2007 on four counts of aggravated sexual battery, and one count of attempted aggravated sexual battery.

(Doc. 15, Attach. 1, pp. 3-7 of 151)[1]  The case went to trial on April 8, 2008.  (Doc. 15, Attach. 1, pp. 103-49 of 151)  Defense counsel objected to and subsequently moved for a mistrial following an *in camera* hearing, because the victim testified before the jury about an alleged crime that was not in the indictment.  (Doc. 15, Attach. 1, pp. 130, 133, 140-46 of 151)  The trial court granted the motion.  (Doc. 15, Attach. 1, p. 148 of 151)

The Grand Jury returned a twelve-count superceding indictment against petitioner the following day, April 9, 2008, charging him with two counts of rape of a child, eight counts of aggravated sexual battery, solicitation of a minor, and attempted aggravated sexual battery.  (Doc. 15, Attach. 1, pp. 8-19 of 151)  The case was tried before a jury September 23-30, 2008.  (Doc. 15, Attach. 4-8)  On October 1, 2008, the jury found petitioner guilty of one count of rape of a child, one count of attempted rape of a child, seven counts of aggravated sexual battery, two counts of child abuse, and attempted solicitation of a minor.  (Doc. 15, Attach. 2, pp. 9-25 of 71; Attach. 9, pp. 30-31 of 45)  The trial court sentenced petitioner to 20 years for rape of a child to be served at one hundred percent.  (Doc. 15, Attach. 13, p. 112 of 121)  Sentences for the lesser offenses were ordered to run concurrently with the 20-year sentence.  (Doc. 15, Attach. 13, pp. 112-14 of 121)  Judgments of convictions entered December 16, 2008.  (Doc. 15, Attach. 2, pp. 43-54 of 71)

Defense counsel filed a motion for a new trial on January 7, 2009.  (Doc. 15, Attach. 2, pp. 55-57 of 71)  An order entered March 17, 2009 denying the motion.  (Doc. 15, Attach. 2, pp. 60-64 of 71; Attach. 15, pp. 4-8 or 10).  Defense counsel filed a notice of appeal on March 24, 2009.  (Doc. 15, Attach. 2, pp. 66-67 of 71)  The Tennessee Court of Criminal Appeals (the Court of Criminal Appeals) affirmed the trial court.  (Doc. 15, Attach. 18)  Defense counsel filed an application for

_____

[1]  The pages in the attachments to Doc. 15 often have multiple page numbers on the same page.  To eliminate confusion, the attachment page numbers referred to herein to are to the page numbers assigned by the court's CM/ECF system.

permission to appeal in the Tennessee Supreme Court on June 13, 2011. (Doc 15, Attach. 19) The application was denied on August 31, 2011. (Doc. 15, Attach. 18, p. 1 of 10)

Post-conviction counsel, Luke Evans, filed a petition for post-conviction relief on May 14, 2012 (Doc. 15, Attach. 21, pp. 3-8 of 113), an amended petition on September 5, 2012 (Doc. 15, Attach. 21, pp. 26-74 of 113), and a second amended petition on October 18, 2012 (Doc. 15, Attach. 21, pp. 85-88 of 113). An evidentiary hearing was held October 25-26, 2012.[2] (Doc. 15, Attach. 22-24) The post-conviction court denied the petition on November 6, 2012. (Doc. 15, Attach. 21, pp. 93-107 of 113) Post-conviction counsel filed a notice of appeal on December 11, 2012. (Doc. 15, Attach. 21, p. 108 of 113) The Court of Criminal Appeals affirmed the post-conviction court. (Doc. 15, Attach. 28) Thereafter, petitioner filed an application for permission to appeal in the Tennessee Supreme Court on May 23, 2014 (Doc. 15, Attach. 29), which was denied on August 27, 2014. (Doc. 15, Attach. 28, p. 1 of 11)

Petitioner brought this action through counsel on December 12, 2014. (Doc. 1) Respondent responded to the petition on April 2, 2015 (Doc. 17),[3] and provided copies of the records of the state court proceedings in petitioner's case (Doc. 15). This matter is now properly before the court.

### III. ANALYSIS

#### A. Standard of Review for Actions Brought
#### Under 42 U.S.C. § 2254

Petitions for federal *habeas corpus* relief filed after April 24, 1996 are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Hoffner v. Bradshaw*, 622 F.3d 487, 494 (6th Cir. 2010)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977)). Title 28 U.S.C. §

---

[2] The Tennessee Post-Conviction Act (the Post-Conviction Act) requires the petitioner to prove his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008).

[3] Counsel for respondent moved to substitute counsel on October 5, 2015. (Doc. 19)

2254(d), as amended by the AEDPA, provides the following with respect to granting a writ of

*habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state

court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121

(2011). Moreover, the AEDPA "modified a federal habeas court's role in reviewing state prisoner

applications . . . to prevent federal habeas retrials and to ensure that state-court convictions are given

effect to the extent possible under the law." *Gumm v. Mitchell*, 775 F.3d 345, 360 (6th Cir.

2014)(quoting *Bell v. Cone*, 535 U.S. 685, 693 (2002)). Finally, where state courts have made

factual determinations on issues presented for *habeas* review, such determinations are presumed

correct, and petitioner has the burden of rebutting that presumption by clear and convincing

evidence. 28 U.S.C. § 2254(e)(1); *see Van Tran v. Colson*, 764 F.3d 594, 604 (6th Cir. 2014).

### B.  Petitioner's Ineffective Assistance of Counsel Claims

Petitioner's first six claims are grounded in allegations of ineffective assistance of counsel.

Ineffective assistance claims are analyzed under the two-part test set forth in *Strickland v.

Washington*, 466 U.S. 668 (1984). To prove ineffective assistance of counsel, petitioner must show

that defense counsel's performance was both objectively unreasonable and that he was prejudiced

as a result, *Strickland*, 466 U.S. at 687, *i.e.*, that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different," *see Drummond v. Houk*, 797 F.3d 400, 405 6th Cir. 2015)(quoting *Strickland*, 466 U.S. at 687-88, 694). In assessing counsel's performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690-91. The post-conviction court correctly identified *Strickland* as controlling with respect to petitioner's ineffective assistance claims. (Doc. 15, Attach. 21, pp. 96-97 of 113)

### 1. Counsel's Request for a Mistrial

Petitioner's first ineffective assistance claim arises from the mistrial. (Doc. 1, ¶¶ I.A)11)-20), pp. 4-6) Petitioner sets forth two separate arguments in support of this claim: 1) defense counsel failed to consult with him prior to moving for a mistrial, and/or to explain the potential consequences of a mistrial; 2) defense counsel acted improperly and unreasonably in seeking a mistrial.

### a. Failure to Consult and Explain

The transcript of the proceedings at the first trial (Doc. 15, Attach. 1, pp. 130-148 of 151), and the transcript of the post-conviction hearing (Doc. 15, Attach. 23, pp. 24-25, 104, 107-08 of 173), establish that defense counsel did not consult with petitioner regarding whether to seek a mistrial, nor did defense counsel explain the potential consequences were the motion granted (Doc. 15, Attach. 23, pp. 24-29, 103-04 of 173). The post-conviction court determined that petitioner was not prejudiced in the first instance because he "had adequate notice of trial counsel's decision to request a mistrial" (Doc. 15, Attach. 21, ¶ 1, pp. 97-98 of 113; Attach. 24, pp. 31-32 of 44) and, in the second instance, the decision to seek a mistrial was based on strategic and tactical considerations (Doc. 15, Attach. 21, ¶ 2, pp. 98-99 of 113; Attach. 24, pp. 32-33 of 44). The Court of Criminal Appeals declined to decide the issue because matters pertaining to a mistrial are not cognizable under the Post-Conviction Procedure Act. (Doc. 15, Attach. 28, pp. 7-8 of 11) The Court of

Criminal Appeals did note, however, that even if the issue were proper, it would "not second-guess a reasonably-based trial strategy." (Doc. 15, Attach. 28, p. 8 of 11)

There is an indisputable *general* proposition in the law that an attorney has a duty "consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. The *Strickland* court noted, however, that the Constitution does not entail a particular set of detailed rules for counsel's conduct at trial, reasoning that any set of detailed rules would "interfere with the constitutionally protected independence of counsel . . . ." *Strickland*, 466 U.S. at 689.

Seven years prior to *Strickland*, the Supreme Court noted the following in *Wainwright v. Sykes*, 433 U.S. 72 (1977) with respect to representation in a criminal case:

> Once counsel is appointed, the day-to-day conduct of the defense rests with the attorney. He, not the client, has the immediate and ultimate responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop. Not only do these decisions rest with that attorney, but such decisions must, as a practical matter, be made without consulting the client. The trial process simply does not permit the type of frequent and protracted interruptions which would be necessary if it were required that clients give knowing and intelligent approval to each of the myriad tactical decisions as a trial proceeds.

*Wainwright*, 433 U.S. at 93. The Supreme Court noted six years later – the year before *Strickland* – that a criminal defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to **whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal**." *Jones v. Barnes*, 463 U.S. 745, 751 (1983)(emphasis added).

Citing *Jones*, the Sixth Circuit wrote in 1996 that, "where . . . defense counsel consents as a matter of trial strategy to a mistrial, that consent binds the defendant . . . regardless of whether the defendant participates in the decision." *Watkins v. Kassulke*, 90 F.3d 138, 143 (6th Cir. 1996). In 2006, the Sixth Circuit repeated its position that a defendant has the "ultimate authority" to make

those "fundamental decisions" articulated in *Jones*. *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 434 (6th Cir. 2006)(quoting *Jones*, 463 U.S. at 751). As explained above, a motion for a mistrial was not a "fundamental decision" that rested with petitioner.[4]

As shown above, defense counsel's decision to request a mistrial without first consulting with petitioner, and/or explaining the potential consequences of a mistrial to him, was not objectively unreasonable per *Watkins*, *Jones*, and *Smith*. The state courts' determination on this issue was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were their decisions based on an unreasonable determination of the facts. Accordingly, this claim is without merit.

Where, as here, a ground for relief is denied on the merits in a *habeas* action, a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the inquiry being whether "reasonable jurists would find the . . . assessment of the constitutional claim [] debatable or wrong." *Webb v. Mitchell*, 586 F.3d 383, 401 (6th Cir. 2009)(quoting *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003)). Petitioner has not made a substantial showing of the denial of a constitutional right, nor would "reasonable jurists" find this assessment debatable or wrong. Therefore, a COA should not issue as to this claim.

### b. Reasonableness of Defense Counsel Seeking a Mistrial

The transcript of the proceedings at the first trial (Doc. 15, Attach. 1, pp. 134-148 of 151), and the transcript of the post-conviction hearing (Doc. 15, Attach. 23, pp. 33-34, 42-44, 48, 82 of 173), show that defense counsel's motion for a mistrial was based his concern that the victim's improper testimony was highly prejudicial to petitioner, and likely would result in petitioner's

---

[4] A survey of case law in other circuits shows that every other circuit to have addressed this issue – before and since – has adhered to the Sixth Circuit's position on "fundamental decisions" set forth in *Jones* and *Watkins*. *See United States v. Chapman*, 593 F.3d 365, 368 (4th Cir. 2010); *United States v. Allick, et al.,* 386 Fed.Appx. 100, 105 (3rd Cir. 2010); *United States v. Burke*, 257 F.3d 1321, 1324 (11th Cir. 2001); *United States v. Washington*, 198 F.3d 721, 723 (8th Cir.1999); *Galowski v. Murphy*, 891 F.2d 629, 639 (7th Cir.1989).

conviction. The transcript of the first trial shows that the trial judge agreed that petitioner could have been prejudiced by the victim's improper testimony. (Doc. 15, Attach. 1, p. 147 of 151)

The state post-conviction court determined that defense counsel's representation was not deficient because his decision was based on strategic and tactical considerations, *i.e.*, defense counsel believed petitioner was innocent, and sought to protect him from conviction. (Doc. 15, Attach. 21, ¶ 2, pp. 98-99 of 113; Attach. 24, pp. 31-32 of 44) As previously noted above at pp. 5-6, the Court of Criminal Appeals concluded that this issue was not cognizable under the Post-conviction Act, but stated in dicta that, even if the claim were proper, it would "not second-guess a reasonably-based trial strategy."

A *habeas* petitioner demonstrates prejudice if his sentence is increased by the alleged deficient performance of his attorney. *See Glover v. United States*, 531 U.S. 198 (2001). The petitioner's sentence under the superseding indictment was greater than the maximum it could have been under the original indictment. Therefore, the mistrial prejudiced petitioner by definition. The question now is whether defense counsel's actions were objectively reasonable.

It is important to note here that "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Harrington v. Richter*, 562 U.S. 86, 110 (2011). "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. Therefore, "every effort [must] be made to eliminate the distorting effects of hindsight . . . ." *Stumpf v. Robinson*, 722 F.3d 739, 753 (6th Cir. 2013)(quoting *Strickland*, 466 U.S. at 689).

Defense counsel's decision to move for a mistrial to protect petitioner's rights was not objectively unreasonable under the circumstances. The state courts' determination on this issue also was neither contrary to, nor involved an unreasonable application of, clearly established federal law,

nor were their decisions based on an unreasonable determination of the facts. Consequently, this claim is without merit. Because petitioner has not made a substantial showing of the denial of a constitutional right, a COA should not issue as to this claim for reasons explained above at p. 7.

## 2. Failure to Investigate the Case, Interview and/or Call Pertinent Witnesses

Petitioner argues in his second ineffective assistance claim that defense counsel: 1) did not call Lisa Dupree, a forensic social worker at Our Kids Center in Nashville[5] ("Our Kids") to testify at trial; 2) did not call psychologist Dr. Maureen Sanger, who worked at Our Kids in 2001, to testify at trial; 3) did not investigate forensic interviewing protocols, or elicit testimony regarding forensic interview protocols; 4) was not competent to address the complexities in cases involving sexual abuse of children, and failed to present relevant, readily available information to impeach the State's key witness; 5) did not call Eleanor and Dale Rose to testify at trial; 6) was ineffective at trial in questioning Patricia Foster, petitioner's sister, and Amanda Rogers, petitioner's niece; 7) did not call petitioner's son, David Neal Davis (Neal Davis), to testify at trial; 8) did not call Christina Lokin to testify at trial. (Doc. 1, ¶¶ I.B)21)-50), pp. 6-11)

### a. Defense Counsel's Representation With Respect to Lisa Dupree, Dr. Maureen Sanger, Eleanor and Dale Rose, Patricia Foster, Amanda Rogers, Neal Davis, and Christina Lokin

**Lisa Dupree.** Ms. Dupree testified at the post-conviction hearing that she evaluated children when sexual abuse was alleged, that she evaluated the victim once in September 2006, and that she had a "fair bit of training in forensic interviewing." (Doc. 15, Attach. 22, pp. 14-15, 20-21 of 170) Ms. Dupree testified that the victim "described what we identified at that time as digital genital penetration," *i.e.*, the victim said, "he really didn't go inside my private. Well, maybe one time he

---

[5] Our Kids "evaluates children when there are concerns of allegations of sexual abuse." (Doc. 15, Attach. 22, p. 15 of 170)

did." (Doc. 15, Attach. 22, p. 18 of 70)  When asked if she found "any inconsistencies in victim's allegations," Ms. Dupree responded, "I don't recall any . . . ."  (Doc. 15, Attach, 22 p. 20 of 170)  When asked whether the victim was interviewed following the 2006 allegations, Ms. Dupree replied, "[j]ust a collection of a medical history."  (Doc. 15, Attach. 22, p. 21 of 170)  Ms. Dupree was not asked any questions pertaining to forensic interviewing techniques.

Defense counsel testified at the post-conviction hearing that Ms. Dupree "basically backed the State's position . . . indicating that [the victim] did, in fact, report that her father had touched her in a sexual manner . . . there was nothing she said . . . that would lend itself to defense evidence . . . [s]o, I decided not to subpoena her."  (Doc. 15, Attach. 23, pp. 6-7 of 173)

**Dr. Maureen Sanger**.  Dr. Sanger testified at the post-conviction hearing that she had been employed as a psychologist at Our Kids in 2001, and that she interviewed the victim in 2001 because of alleged sexual abuse.  (Doc. 15, Attach. 22, pp. 24-25 of 170)  Dr. Sanger testified that there were inconsistencies in the victim's statements; consequently, she was not "able to conclude with certainty that [the victim] had been sexually abused."  (Doc. 15, Attach. 22, pp. 25-26 of 170)  Dr. Sanger testified that the victim's mother also was "uncertain as to whether or not something inappropriate had happened," conceding to Dr. Sanger that the victim had a vivid imagination and was known to be untruthful.  (Doc. 15, Attach. 22, p. 27 of 170)  When asked if there were any interviewing protocols in place at Our Kids in 2001, Dr. Sanger testified: "We did not have a formal protocol.  But I am certainly well-educated and well-versed in the practice of good forensic interviewing," and followed the proper protocols when she interviewed the victim.  (Doc. 15, Attach. 22, pp. 32-33 of 170)  Although Dr. Sanger was asked on re-direct and re-cross to discuss forensic interviewing protocols in the general context of interviewing children, Dr. Sanger was not asked to address those protocols in the context of the victim's case  (Doc. 15, Attach. 22, pp. 34-42 or 170).

Defense counsel testified at the post-conviction hearing that he "spoke with Ms. Sanger at

length . . . [i]ssued a subpoena for [her] testimony . . . [and] . . . [e]xpected [her] to testify." (Doc. 15, Attach. 23, p. 3 of 173) Defense counsel testified that he did not call Dr. Sanger to testify because: 1) her report did not "appear to be a psychological evaluation . . . just a summary of what third parties . . . told her" (Doc. 15, Attach. 23, p. 3 of 173); 2) because the report was not a professional opinion it constituted inadmissable hearsay (Doc. 15, Attach. 23, pp. 3-5 of 173); 3) in any event, the victim's mother impeached the victim's credibility at trial when she testified under defense counsel's questioning that the victim had an active imagination, could appear to be truthful, but was not (Doc. 15, Attach. 23, pp. 5, 74 of 173).

**Eleanor and Dale Rose.** Ms. Rose, petitioner's sister (Doc. 15, Attach. 22, p. 83 of 170), testified at the post-conviction hearing that defense counsel never contacted her, and that she first met him prior to the sentencing hearing. (Doc. 15, Attach. 22, pp. 83-84 of 170) Ms. Rose testified that she never saw petitioner do anything inappropriate toward the victim, nor did the victim ever tell her that he did. (Doc. 15, Attach. 22, p. 85 of 170) Ms. Rose testified that she supervised the visits with petitioner and Isabel and Cole[6] about once a month, and that she never saw petitioner do anything inappropriate toward them during those visits. (Doc. 15, Attach. 22, pp. 85-86 of 170)

Mr. Rose, petitioner's brother-in-law (Doc. 15, Attach. 22, p. 70 of 170), testified that at the post-conviction hearing that defense counsel never contacted him. (Doc. 15, Attach. 22, pp. 70-71 of 170) Mr. Rose also testified that he supervised petitioner's visitation with Isabel and Cole "quite often." (Doc. 15, Attach. 22, pp. 71-72 of 170) Mr. Rose testified that he saw the victim once when he was picking up the Isabel and Cole, and that she seemed "kindly happy." (Doc. 15, Attach. 22, pp. 72-73 of 170) Mr. Rose also testified that he did not notice "anything unusual" between petitioner and the victim during family gatherings before the 2006 allegations. (Doc. 15, Attach.

---

[6] Petitioner's natural children with the victim's mother.

22, pp. 74-75 of 170)  Mr. Rose also testified on cross examination that he only saw the victim about once a year prior to the 2006 accusations, and did not know how she acted on a daily basis.  (Doc. 15, Attach. 22, p. 77 of 170)

Defense counsel testified at the post-conviction hearing that he had not been made aware of the Roses (Doc. 15, Attach. 23, p. 84 of 173), although petitioner testified, "I think I gave him all of my siblings' names" (Doc. 15, Attach. 23, p. 100 of 173).  Defense counsel testified further that, even if he had been aware of the Roses, they would not have been able to say anything that "six other people did not say in great detail."[7]  (Doc. 15, Attach. 23, p. 84 of 173)

**Patricia Foster.**  Ms. Foster, who appeared as a witness at trial, testified at the post-conviction hearing that, although she was unsure whether defense counsel contacted her, she contacted defense counsel who asked her to testify.  (Doc. 15, Attach. 22, p. 115 of 170)  Ms. Foster testified that defense counsel "never set up an appointment to interview me."  (Doc. 15, Attach. 22, p. 116 of 170)  Ms. Foster testified that she supervised petitioner's visits with Isabel and Cole "[m]any times" after the victim's allegations surfaced.  (Doc. 15, Attach. 22, p. 116 of 170) Petitioner testified she saw the victim once when she picked up Isabel and Cole when petitioner was with her, and  the victim "looked out the window and wa[i]ved at us."  (Doc. 15, Attach. 22, pp. 117-18 of 170)  Ms. Foster testified that she never saw petitioner act inappropriately toward the victim, nor she toward him.  (Doc. 15, Attach. 22, pp. 119-20 of 170)

---

[7] Amanda Rogers, petitioner's niece, testified at trial  (Doc. 15, Attach. 7, pp. 182-200 of 289), as did Melissa Davis, petitioner's daughter (Doc. 15, Attach. 7, pp. 200-33 of 289), and Patricia Foster, petitioner's older sister (Doc. 15, Attach. 8, pp. 185-98 of 224).  Each testified about the relationship between petitioner and the victim, testimony with respect to which petitioner argues more witnesses should have been called.  Post-conviction counsel's theory on this point is reflected in his answers to two questions posed by the post-conviction court: "So, you are saying have more witnesses testify to . . . fact[s] that's already in the record would be beneficial to Mr. Davis?"  (Doc. 15, Attach. 24, p. 13 of 44)  Post-conviction counsel responded, "Yes."  (Doc. 15, Attach. 24, p. 13 of 44)  The post-conviction court then asked: "So, you don't know how many testified in the trial . . . you think they should have just had some more."  (Doc. 15, Attach. 24, p. 14 of 44)  After some equivocating, post-conviction counsel answered, "Yes, sir."  (Doc. 15, Attach. 24, p. 15 of 44)

Defense counsel testified that he spoke "at length" with Ms. Foster, and took exception to her testimony to the contrary. (Doc. 15, Attach. 22, pp. 115, 122 of 170; Attach. 23, pp. 13-14 of 173) Defense counsel testified further that the crux of Ms. Foster's testimony was that she never observed anything abnormal between petitioner and the victim. (Doc. 15, Attach. 23, p. 14 of 173) Defense counsel concluded that "there wasn't a great deal to discuss [with Ms. Foster] because she didn't know a great deal." (Doc. 15, Attach. 23, p. 14 of 173)

**Amanda Rogers.** Ms. Rogers, whom defense counsel called as a witness at trial,[8] testified at the post-conviction hearing that that she used to babysit the victim. (Doc. 15, Attach. 22, p. 124 of 170) Ms. Rogers testified that she did not speak with defense counsel much, and only met with him in the lobby of his law office where he asked her "general questions." (Doc. 15, Attach. 22, pp. 124-25 of 170) Ms. Rogers testified that she never saw petitioner act inappropriately toward the victim in the many times she had been around them, nor did the victim ever tell her that he had. (Doc. 15, Attach. 22, pp. 125-26 of 170) Ms. Rogers testified that petitioner and the victim had a normal father-daughter relationship. (Doc. 15, Attach. 22, pp. 126-27 of 170) Ms. Rogers testified that she occasionally supervised petitioner's later visits with Isable and Cole, and that she never saw petitioner do anything appropriate with them. (Doc. 15, Attach. 22, pp. 127-28 of 170) She testified that she once saw the victim look out the window and waive. (Doc. 15, Attach. 22, p. 128 of 170) Ms. Rodgers testified that she stopped supervising the visits when the victim's mother threatened to shoot her and her children. (Doc. 15, Attach. 22, p. 129 of 170) Ms. Rodgers testified that she told defense counsel of the event, but was not asked about the incident at trial. (Doc. 15, Attach. 22, pp. 129-30 of 170) She admitted on cross examination that she had not been around the victim, nor had she observed petitioner and the victim together since 2001.

---

[8] The post-conviction court incorrectly stated from the bench that Ms. Rogers did not testify at trial. (Doc. 15, Attach. 24, p. 33 of 44) She did testify. (Doc. 15, Attach. 7, pp. 182-97 of 289)

Defense counsel produced a list of witnesses at the post-conviction hearing that he interviewed that included Ms. Rogers. (Doc. 15, Attach. 23, p. 15 of 173) Petitioner stated the following with respect to Ms. Rogers: "The problem with these witnesses is . . . they can be character witnesses. But, again, none of them saw anything . . . [E]very single incident . . . . There were no witnesses to any of this." (Doc. 15, Attach. 23, pp. 15-16 of 173)

**Neal Davis.** Neal Davis testified at the post-conviction hearing that he met defense counsel for the first time on the day of trial, that he never spoke with defense counsel by phone, and that defense counsel did not "show any kind of interest in putting [him] on the stand." (Doc. 15, Attach. 22, pp. 133-34 of 170) Neal Davis testified that he had been around petitioner and the victim, that he had never seen petitioner act inappropriately toward her, and that the victim appeared normal around him. (Doc. 15, Attach. 22, pp. 135-36 of 170) Neal Davis testified that the relationship was a "[t]ypical family scenario." (Doc. 15, Attach. 22, pp. 136-37 of 170)

Defense counsel testified that he met with Neal Davis before the trial. (Doc. 15, Attach. 23, p. 59 of 173) Defense counsel testified that his testimony was "cumulative . . . [b]ecause what he was saying [was] consistent with a half dozen other witnesses." (Doc. 15, Attach. 23, p. 60 of 173)

The post-conviction court denied petitioner's request for post-conviction relief with respect to the seven above-named potential witnesses ruling that "[a]ny decision . . . not to allow an individual to testify [wa]s a strategic decision," and that petitioner had "not shown by clear and convincing evidence that such conduct constitutes deficient performance . . . ." (Doc. 21, p. 100 of 113) The Court of Criminal Appeals ruled that it "may not second-guess a reasonably-based trial strategy," and that petitioner failed to demonstrate prejudice (Doc. 15, Attach. 28, pp. 2-5, 8 of 11).

The state courts' determination on this issue with respect to the seven individuals identified above was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were the their decisions based on an unreasonable determination of the facts.

14

Consequently, this part of petitioner's second ineffective assistance claim is without merit. Because petitioner has not made a substantial showing of the denial of a constitutional right, a COA should not issue as to these claims for reasons explained above at p. 7.

**Christina Lokin.** Petitioner identifies another potential witness, Christina Lokin, arguing that had defense counsel called her to testify, she would have refuted the allegation that she and petitioner had an affair/sexual relationship. (Doc. 1, ¶ I.B)49), p. 10) Ms. Lokin was not identified as one of the witnesses at issue in petitioner' post-conviction petition, amended petition, or second amended petition. (Doc. 15, Attach. 21, pp. 3-8, 26-74, 85-88 of 113) Ms. Lokin also was not called to testify at the post-conviction hearing. Ms. Davis, petitioner's daughter and Ms. Lokin's friend, offered the only testimony regarding Ms. Lokin at the post-conviction hearing. (Doc. 15, Attach. 22, pp. 143-44 of 170) When asked whether defense counsel ever asked about Ms. Lokin, Ms. Davis answered, "No." Ms. Davis went on to testify that it was she who suggested to her father that Ms. Lokin be called to testify about their alleged tryst, and that Ms. Lokin came to the first trial "voluntarily because I asked her to come." (Doc. 15, Attach. 22, p. 144 of 170)

The post-conviction court did not mention Ms. Lokin in its ruling from the bench following the post-conviction hearing (Doc. 15, Attach. 24, pp. 30-42 of 44), nor did the court mention her in its written order denying petitioner's request for post-conviction relief (Doc. 15, Attach. 21, pp. 93-107 of 113). The Court of Criminal Appeals did not mention Ms. Lokin in its opinion on appeal.[9] (Doc. 15, Attach. 28)

It is obvious from the record that petitioner did not exhaust this claim as to Ms. Lokin in state court, and now his claim with respect to her is procedurally defaulted. *See* Tenn. Code Ann. §§ 40-

---

[9] The record shows that petitioner mentioned Ms. Lokin's name four times by name in his brief on appeal in the context of another claim, but not as a specific prospective witness with respect to whom petitioner sought to draw the Court of Criminal Appeals' attention. (Doc. 15, Attach. 26, pp. 27-28, 50 of 83)

30-102, 40-30-117. "Unexcused procedural default precludes federal habeas review." *Bies v. Sheldon*, 775 F.3d 396, 396 (6th Cir. 2014)(citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). The federal courts may excuse procedural default only upon a showing of either cause and prejudice or that a fundamental miscarriage of justice will result if the claim is not considered. *Bies*, 775 F.3d at 396 (citing *Murray*, 477 U.S. at 495-96). To show "cause," the petitioner must "establish that some objective factor external to his defense impeded his ability to comply with the state's procedural rule." *Bies*, 775 F.3d at 396 (citing *Murray*, 477 U.S. at 495-96). To show prejudice, the petitioner "must show that the error worked to his actual and substantial disadvantage, 'infecting his entire trial with error of constitutional dimensions.'" *Bies*, 775 F.3d at 396 (citing *Murray*, 477 U.S. at 494). A fundamental miscarriage of justice arises "when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013)(citing *Murray*, 477 U.S. at 495-96).

Petitioner has made no effort to show cause and prejudice. Neither does he argue that a fundamental miscarriage of justice will result if this ineffective assistance claim is not reviewed. Indeed, were Ms. Lokin to have testified, her testimony would have been that she and petitioner did not have a sexual relationship – not that petitioner actually was innocent of the offenses for which he was convicted. For these reasons, the district court lacks jurisdiction to address this part of petitioner's claim on the merits.[10]

Where, as here, *habeas* relief is denied on procedural grounds, petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was

---

[10] The Magistrate Judge notes as a matter of interest that, notwithstanding that the district court is barred from considering this claim, defense counsel's representation can scarcely be deficient when he was unaware of Ms. Lokin's existence as can be inferred from Ms. Davis' testimony referred to on p. 15 above.

correct in its procedural ruling." *Porterfield v. Bell*, 258 F.3d 484, 486 (6th Cir. 2001)(citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Jurists would not debate that petitioner has failed to state a valid claim of the denial of a constitutional right as this claim pertains to Ms. Lokin, nor would they debate whether the this procedural ruling is correct. Accordingly, a COA should not issue on this element of petitioner's second ineffective assistance claim.

### b. Failure to Investigate Forensic Interviewing Protocols, or to Elicit Testimony Regarding Forensic Interview Protocols

Petitioner argues that defense counsel's representation was deficient because he "failed to investigate the protocols for forensic interviewing and failed to elicit any testimony from any witness regarding forensic interview protocols and the potential downfalls of an improperly conducted interview." (Doc. 1, ¶ I.B)35), p. 8)

Petitioner asserted in his post-conviction petition that the victim was "interviewed by a forensic interviewer . . . in 2006 . . . ." (Doc. 15-21, p. 63 of 113) As previously noted above at pp. 9-10, Ms. Dupree testified that she was a forensic social worker, and Dr. Sanger testified that she was "well-educated and well-versed in the practice of good forensic interviewing." Neither Ms. Dupree nor Dr. Sanger was asked at the post-conviction hearing to relate forensic interviewing protocols to the victims case, nor was any other witness called to do so.

The post-conviction court noted from the bench following the hearing that "[t]his forensic interviewer that interviewed the victim was not called in this post conviction case." (Doc. 15, Attach. 24, p. 37 of 44) The post-conviction court ruled in its order denying post-conviction relief that, not only was defense counsel's decision not to call a witness a strategic choice, petitioner failed to establish that defense counsel's representation was deficient by clear and convincing evidence on this point. (Doc. 15, Attach. 21, ¶ 11, pp. 103-04 of 113)

The Court of Criminal Appeals wrote the following in its opinion on appeal from the

decision of the post-conviction court:

> The post-conviction court . . . determined that it was not ineffective for trial counsel to fail to call the forensic interviewer who interviewed the victim as a witness. The post-conviction court noted that Petitioner did not produce this witness at the post-conviction hearing and determined that trial counsel was not ineffective in this regard.
>
> A post-conviction petitioner making a claim regarding the failure to call a witness bears a duty to present the witness at the post-conviction hearing in order to enable this Court to determine whether his or her testimony might have altered the results of the trial. Because Petitioner failed to produce such a witness at the hearing, he is not entitled to relief based on a claim that the failure amounted to ineffective assistance of counsel.

(Doc. 15, Attach. 28, pp. 8-9 of 11)(internal citation omitted)

Petitioner has failed to make a showing of deficient-representation with respect to this claim. The state courts' determination as to this issue was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were their decisions based on an unreasonable determination of the facts. Therefore, this claim is without merit. Because petitioner has not made a substantial showing of the denial of a constitutional right, a COA should not issue as to this part of petitioner's second claim for reasons explained above at p. 7.

### c. Incompetence to Address the Complexities Inherent in Cases Involving Sexual Abuse of Children, and Failure to Present Relevant, Readily Available Information to Impeach the State's Key Witness

Petitioner argues that defense counsel was incompetent to address the complexities inherent in cases involving alleged sexual abuse of a child, and that he failed to present relevant, readily available information to impeach the State's key witnesses.[11] (Doc. 1, ¶¶ I.B)36)-37), p. 8) To the

___

[11] The Magistrate Judge notes for the record that petitioner raised a claim on post-conviction pertaining to the failure to call an expert witness. Petitioner does not mention defense counsel's decision not to call an expert witness in his *habeas* petition. Even if he had raised such a claim in the instant proceeding, he would not be entitled to *habeas* relief. Both the post-conviction court and the Court of Criminal Appeals determined that petitioner was not entitled to

extent that these claims summarize petitioner's ineffective assistance claims addressed above, the court need not address them. To the extent they are intended as stand-alone claims for *habeas* relief, petitioner fails to provide any argument, citation to relevant authorities, or reference to the record. In the latter instance, these claims are naked allegations at best and, as such, they are waived. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Jurists of reason would not debate that petitioner has failed to state a valid claim of the denial of a constitutional right, nor would they debate whether the procedural ruling above is correct. Accordingly, a COA should not issue on this final element of petitioner's second claim for reasons explained above at p. 17.

### 3. The Victim's Mental Health Records

Petitioner argues that defense counsel was ineffective for not requesting and obtaining records pertaining treatment provided to the victim by a mental health professional in 2001 and 2006. (Doc. 1, ¶ I.C)51)-54), p. 11) Noting that the court quashed a subpoena during the post-conviction hearing as confidential and privileged, petitioner adds that he will "move this Court to allow the petitioner and his attorneys to review these records and, thereafter, amend this Petition, if necessary."

Defense counsel testified at the post-conviction hearing that he did not recall whether the victim was being treated by a private psychologist. (Doc. 15, Attach. 23, pp. 70-71 of 173) He added that, even if he had been aware of such records, they "would have been suppressed as being

---

post-conviction relief because no expert witness was called to testify at the post-conviction hearing. (Doc. 15 Attach. 21, ¶ 4, pp. 100-01 of 113; Attach. 28, pp. 6, 9 of 11)

confidential." (Doc. 15, Attach. 23, p. 71 of 173)

Attorney Terry Fann appeared at the hearing on behalf of his client, Ms. Melissa Crim, on whom a subpoena *duces tecum* had been served to produce the records at issue. (Doc. 15, Attach. 22, pp. 8-13, 98-111 of 170) Ms. Crim, a "licensed professional counselor" who "provided counseling to [the victim] as a patient," did not testify. (Doc. 15, Attach. 22, pp. 8-9 of 170) Mr. Fann made an offer of proof in support of the motion to quash. (Doc. 15, Attach. 22, pp. 55, 98-13, 98-111 of 170)

The post-conviction court determined subsequently at the hearing that the mental health records at issue were inadmissable because they were privileged. (Doc. 15, Attach. 22, p. 111 of 170) The post-conviction court wrote the following in its order granting the motion to quash, citing Supreme Court case law, Tennessee statute, and Tennessee case law:

> All communications between a patient and her therapist are privileged under Tennessee Code Annotated section 63-22-114, which states:
>
> > Confidential relations and communications between licensed marital and family therapists, licensed professional counselors, or certified clinical pastoral counselors, and clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this part shall be construed to require any privileged communications to be disclosed.
>
> The defendant has not presented proof that demonstrates a reasonable basis for access to the counselor's testimony or records. The Defendant's proof fails to show any likelihood that the information sought from the counselor is material to the Defendant's case. Also, as stated above, some degree of specificity is required: a general 'fishing expedition' for any and all information in one's possession is prohibited. There being no reliable evidence to support the Defendant's subpoena, this court sees no reason to compel discovery of the counselor's records.

(Doc. 15, Attach. 21, p. 92 of 113)(internal citations omitted)

The court noted from the bench at the conclusion of the post-conviction hearing that defense counsel was "not required to try to find things that are not admissible." (Doc. 15, Attach. 24, p. 35 of 44) The post-conviction court noted further that:

> Failure to interview the witness for Defense, Ms. Crim. [Defense counsel] did not know that the child was under therapy with Mr. Crim. Nobody would have known that I don't believe. There is no proof how he would have known that. And, certainly, even if he did, based upon this information, the privilege question does come into play.

(Doc. 15, Attach. 24, p. 39 of 44) In its order denying relief, the post-conviction court wrote the following:

> [Defense counsel's] decision not to request these records was a strategic decision at best. . . . Additionally, this court previously determined said evidence to be inadmissible as privileged information, and entered a previous order to this effect . . . . Thus, Petitioner has not established that trial counsel was ineffective . . . .

(Doc. 15, Attach. 21, ¶ 5, p. 101 or 113) The Court of Criminal Appeals addressed this issue as follows:

> At the post-conviction level, Petitioner filed a subpoena seeking to obtain the records without knowing what the records would contain. The post-conviction court quashed the subpoena on the basis that the records were privileged. Petitioner offered no other proof at the post-conviction hearing to show that the records would be beneficial to the defense or that they were otherwise discoverable.
>
> After the post-conviction hearing, the post-conviction court determined that trial counsel made a strategic decision by not seeking mental health records for the victim. The court noted that trial counsel is 'not required to try to find things that are not admissible' at trial. The post-conviction court also noted that trial counsel was not ineffective for failing to interview the therapist with whom the victim was meeting. Specifically, the post-conviction court noted that there was no proof that anyone knew that the victim was going to therapy and, in any event, the information could have been privileged. Again, this Court may not second-guess a reasonably-based trial strategy. Moreover, Petitioner failed to show how he was

> prejudiced by the trial counsel's alleged deficiencies. This issue is
> without merit.

(Doc. 15, Attach. 28, p. 9 of 11)(internal citation omitted)

Petitioner has failed to make a showing of deficient-representation in the context of this claim. The state courts' determination on this issue was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were their decisions based on an unreasonable determination of the facts. Consequently, this claim is without merit.[12] Because petitioner has not made a substantial showing of the denial of a constitutional right, a COA should not issue as to this claim for reasons explained above at p. 7.

### 4. The Victim's Prior Recorded Statement

Petitioner argues that defense counsel's representation was deficient because he did not use the victim's prior recorded statement during the investigation to impeach her credibility through the introduction of prior inconsistent statements. (Doc. 1, ¶ I.D)56)-75), pp. 12-14)

Defense counsel admitted at the post-conviction hearing that he received the video at issue, and "probably watched [i]t without exaggeration probably four full times . . . ." (Doc. 15, Attach. 23, pp. 19, 60-61 of 173) Defense counsel could not recall whether there were any inconsistent statements regarding what happened, but noted that "clearly the vast majority of it would be very incriminating, not exculpatory," and "whatever gain could have been made would have been certainly grossly outweighed by the incriminating statements." (Doc. 15, Attach. 23, pp. 62-63 of 173) Defense counsel testified further that he "cross examined [the victim] at length and as

---

[12] Were petitioner to move to subpoena those record as he suggests, there would be no grounds for the district to grant the motion. First, as shown above, the post-conviction court quashed the subpoena for the victim's psychological records as protected and confidential under state law. Such matters of state law are not cognizable in federal *habeas corpus*. Second, the post-conviction court determined that the demand to produce the records at issue was little more than a fishing expedition which discovery rules do not permit. "Fishing expeditions" in the name of discovery are impermissible under the federal rules as well. Finally, as noted above, the state courts determined that defense counsel was not required to discover evidence that was inadmissible and, as such, his representation was not deficient.

vigorously as I thought I could and should given her age." (Doc. 15, Attach. 23, pp. 61-64 of 173)

The following is an excerpt of an exchange that transpired between the post-conviction court and petitioner's attorney at the hearing pertaining to the video:

> THE COURT: You also agree there is some bad stuff – if it gets played to the jury, there is some bad stuff for your client on there, too?
>
> MR. EVANS: Oh, I would agree. . . .
>
> THE COURT: . . . . I guess my question is, will you also agree that on the videotape there is some damaging things that she says about your client or reinforces some things that she testified to?
>
> MR. EVANS: Sure.
>
> THE COURT: And, so, is that not a strategic decision to make? Because once you play part of this, then other parts can come in where normally it couldn't come in at all. So, is that not a strategic decision about whether you open the door to play part of this to keep the other stuff out or to bolster her testimony.
>
> MR. EVANS: . . . . [I]t is a strategic decision. The question is whether . . . it was a reasonable strategic decision from our position.

(Doc. 15, Attach. 24, pp. 22-23 of 44)

The post-conviction court addressed this issue as follows in its order denying petitioner's petition for post-conviction relief:

> Following a review of the video interview in question, the court agrees with the Petitioner that some inconsistencies are present in [the victim's] statements. However, the interview also contains statements made by [the victim] that could potentially bolster her testimony at trial. [Defense counsel's] decision not to submit this video interview as evidence, as well as his decision not to cross examine [the victim] on the same can be viewed as a strategic decision by counsel.

(Doc. 15, Attach. 21, ¶ 6, pp. 101-02 of 113) Finding this issue to be without merit, the Court of Criminal Appeals wrote that it "may not second-guess a reasonably-based trial strategy." (Doc. 15,

Attach. 28, p. 9 of 11)

Petitioner has failed to make a showing of deficient-representation in the context of this claim. The state courts' determination on this issue was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were their decisions based on an unreasonable determination of the facts. Consequently, this claim is without merit. Because petitioner has not made a substantial showing of the denial of a constitutional right, a COA should not issue as to this claim for reasons explained above at p. 7.

### 5. Testimony Regarding Evidence of
### Other Crimes not Charged
### in the Indictment

Petitioner argues that defense counsel's representation was deficient because he did not object to the victim's testimony regarding crimes not charged in the indictment, *i.e.*, that the abuse occurred "all the time," "several times a week," and that there were "hundreds" of such incidents. (Doc. 1, ¶ I.E)76)-83), pp. 14-15)

The post-conviction court made the following related observation from the bench at the conclusion of the evidentiary hearing:

> Next, there was a claim of failure to object to evidence of other crimes not charged in the indictment. . . . [C]ertainly that could have been brought up at the appeal issue or the first time this came up. I do not believe that goes to ineffective assistance of counsel."

(Doc. 15, Attach. 24, p. 36 of 44) The post-conviction court concluded in its subsequent order denying post-conviction relief: defense counsel's "failure to object to this evidence . . . does not fall below the objective standard of reasonableness, and outside the wide range of reasonable professional assistance under this case's circumstances," and "petitioner has not met his burden in demonstrating by clear and convincing evidence that [defense counsel's] actions prejudiced the . . . . case." (Doc. 15, Attach. 21, ¶ 7, p. 102 of 113) Apparently relying on the post-conviction court's

ruling from the bench rather than its written order, the Court of Criminal Appeals incorrectly determined that this claim was waived because "Th[e] issue 'could have been brought up on appeal . . . .'" but was not. (Doc. 15, Attach. 28, p. 10 of 11)

As previously noted above at p. 3 n. 2, petitioner is required under the Post-Conviction Act to present clear and convincing evidence that he is entitled to post-conviction relief. Petitioner did not introduce any evidence on this issue at the post-conviction hearing nor, apart from the post-conviction court addressing it *sua sponte* in his ruling from the bench following closing arguments, and order denying post-conviction relief, was the issue raised before the post-conviction court.

The post-conviction court's determination that petitioner did not prove this issue by clear and convincing evidence is entitled to the presumption of correctness. The post-conviction court's concomitant determination that petitioner did not demonstrate that defense counsel's failure to object to the testimony at issue prejudiced his case did not constitute an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts in light of the evidence. Accordingly, this claim is without merit. Because petitioner has not made a substantial showing of the denial of a constitutional right, a COA should not issue as to petitioner's fifth claim for reasons explained above at p. 7.

### 6. Investigation and Cross-Examination
### of the Victim's Mother

Petitioner argues that defense counsel's representation was deficient because: 1) he did not question the victim's mother whether, in her opinion, the victim could have "learned the information underlying the[] allegations" from a school friend "who had also been to DCS"; 2) he did not question the victim's mother about "prior statements that she made in regard . . . other ways that [the victim] could have learned the information she later revealed as allegations . . . ." (Doc. 1, ¶ I.F)84)-91), pp. 15-16)

The post-conviction court noted the following from the bench following closing arguments at the post-conviction hearing:

> Next, failure to adequately investigate and cross examine Ms. Stoner or Susan Stoner. And I think what Mr. Evans said that really you did a pretty good job cross examining Ms. Stoner. And there was really no proof that he did not.

(Doc. 15, Attach. 24, p. 36 of 44) The post-conviction court wrote the following in its order denying petitioner's petition for post-conviction relief:

> Petitioner argues that [defense counsel] failed to adequately investigate and cross examine Susan Stoner at trial. The court does not see sufficient proof to support this theory. Petitioner has not demonstrated by clear and convincing evidence that [defense counsel's] investigation or cross examination . . . constitutes ineffective assistance of counsel.

(Doc. 15, Attach. 21, pp. 201-03 of 113) The Court of Criminal Appeals agreed with the post-conviction court adding:

> The record reflects that trial counsel prepared for trial and adequately questions the victim's mother. Petitioner does not show clear and convincing evidence that the cross examination of Susan Stoner at trial resulted in prejudice.

(Doc. 15, Attach. 28, p. 10 of 11)

As previously established, petitioner was required to present clear and convincing evidence that he was entitled to post-conviction relief. A plain reading of the record shows that petitioner did not introduce any evidence on this two-part issue at the post-conviction hearing nor, apart from the post-conviction court addressing it *sua sponte* in his ruling from the bench following closing arguments, and order denying post-conviction relief, was the issue raised at any other time before or by the post-conviction court.

Petitioner has failed to make a showing of deficient-representation in the context of this claim. The state courts' determination on this issue was neither contrary to, nor involved an

unreasonable application of, clearly established federal law, nor were their decisions based on an unreasonable determination of the facts. Consequently, this claim is without merit. Because petitioner has not made a substantial showing of the denial of a constitutional right, a COA should not issue for reasons explained above at p. 7.

### C. Petitioner's Venue Claim

Petitioner argues that he is entitled to federal *habeas* relief because the trial court erred in not dismissing counts five and seven – aggravated sexual battery – of the superceding indictment for failure prove venue. (Doc. 1, ¶¶ II.92)-99), pp. 17-18) Petitioner asserts that this error violated his rights under the Sixth, Eighth, and Fourteenth Amendments.

 Petitioner raised this claim on direct appeal. However, a plain reading of the brief on appeal shows that petitioner did not allege that the trail court's decision violated a federal constitutional right. Instead, the brief on appeal shows that he challenged the trial court's decision only in terms of Tenn. Code Ann. § 39-11-201(e), Rule 18, Tennessee Rules of Criminal Procedure, and Tennessee case law. (Doc. 15, Attach. 16, ¶ 3, pp. 49-52 of 59)

Although alleged violations of state law generally are not cognizable in *habeas*, "the Supreme Court has left room for the argument that a state-law error could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Wheeler v. Simpson*, 779 F.3d 366, 398 (6th Cir. 2015)(quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). That said, a *habeas* petitioner must have fairly presented" his claim to the state courts for the claim to be considered properly exhausted, *i.e.*, the state courts must have been "given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009)(citation omitted). To satisfy this requirement, and avoid procedural default, petitioner's federal *habeas* petition "must be based on the same theory presented in state court and cannot be based on a wholly separate or distinct theory." *Carter v.*

*Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012)(citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.1998)("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal courts.").

As noted above, petitioner raised this claim on appeal in the context of alleged state law violations, not violations of the U.S. Constitution. Consequently, the claim presently before the court is procedurally defaulted. As previously noted above at p. 16, the district court may address a procedurally defaulted claim only if petitioner establishes cause and prejudice, or that a fundamental miscarriage of justice will occur if the claim is not reviewed. As appellate counsel neglected to raise this issue on appeal on federal constitutional grounds, petitioner cannot establish that an "objective factor external to his defense impeded his ability to comply with the state's procedural rule." Therefore, petitioner cannot satisfy the two-part cause-and-prejudice test to excuse procedural default. The "miscarriage of justice" exception pertains to "actual as compared to legal innocence." *Colderon v. Thompson*, 523 U.S. 538, 559 (1998). Because petitioner's venue claim goes to legal/technical innocence, the miscarriage of justice exception also does not apply. Consequently, the district court lacks jurisdiction to address this claim on the merits.

Jurists of reason would not debate that petitioner has failed to state a valid claim of the denial of a constitutional right in this claim, nor would they debate whether the procedural ruling above is correct. Accordingly, a COA should not issue as to this claim for reasons previously explained above at p. 17.

### D. Evidentiary Hearing

Petitioner has requested an evidentiary hearing. (Doc. 1, p. 19) Whether to grant an evidentiary hearing is "'generally left to the sound discretion of district courts.'" *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). However, "if the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas

relief, the district court is not required to hold an evidentiary hearing." *Ata*, 662 F.3d at 742 (quoting *Schriro*, 550 U.S. at 473). Upon consideration of the foregoing and the record as a whole, the Magistrate Judge is of the opinion that an evidentiary hearing is not necessary in this case. Rule 8(a), Rules – § 2254 Cases.

## IV. CONCLUSIONS
## AND
## RECOMMENDATIONS

For the reasons explained above, the Magistrate Judge recommends that: 1) petitioner's *habeas corpus* petition (Doc. 1) be **DENIED** and this action **DISMISSED WITH PREJUDICE**; 2) petitioner's request for an evidentiary hearing be **DENIED AS UNNECESSARY**; 3) the order entered by the District Judge approving and adopting this R&R constitute the **FINAL JUDGMENT** in this action; 4) should petitioner file a timely notice of appeal, such notice should be **DOCKETED AS BOTH A NOTICE OF APPEAL AND A COA**, but a **COA SHOULD NOT ISSUE**.

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 7th day of October, 2015.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge